NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY REGIONAL COUNCIL OF CARPENTERS and NEW JERSEY CARPENTERS FUNDS and the TRUSTEES THEREOF,<br><br>Petitioners,<br><br>vs.<br><br>HEARTLAND DEVELOPMENT COMPANY, INC. and HEARTLAND BUILDING COMPANY, INC.,<br><br>Respondents. | Civil Action No.: 09-178 (PGS)<br><br>OPINION |

**SHERIDAN, U.S.D.J.**

This case involves a dispute over alleged violations of a collective bargaining agreement between New Jersey Regional Council of Carpenters (the "Council") and Heartland Development Company, Inc. ("Heartland Development"). On December 10, 2008, the Council obtained an arbitration award against Heartland Development and Heartland Building Company, Inc. ("Heartland Building"), a corporate entity allegedly related to Heartland Development. The Council now moves to confirm the award, and Heartland Development cross-moves to vacate the award, and Heartland Building cross-moves to vacate both default judgment and the award.[1] For the following reasons,

---

[1] The Council's motion to confirm the arbitration award was administratively terminated after the Court granted judgment. The Council did not re-file its original moving papers after

1

the Court grants in part and denies in part the Council's motion, denies Heartland Development's cross-motion, and grants Heartland Building's motion.

I.     **BACKGROUND**

On October 18, 2002, the Council and Heartland Development entered into a short form agreement to a collective bargaining agreement (collectively, the "CBA"). (Pl. Petition Exs. A, B.) The CBA requires Heartland Development to make contributions to certain "fringe benefit funds," including the New Jersey Carpenters Funds (collectively, the "Funds") for the benefit of Council members. (*Id.* Ex. A at 24-25.) The CBA further provides that, with limited exceptions, interpretation and application of the CBA, including disputes over contributions to the Funds, is addressed through a four step grievance process. (*Id.* at 14-15.) If Steps I through III do not resolve a dispute, the CBA requires binding arbitration before one of three permanent arbitrators. (*Id.*)

On May 1, 2008, the Council filed a "Step I" grievance letter against Heartland Development in connection with work performed by Council members in and around April 2008 at a Rite Aid located at 235 North Maple Avenue, Marlton, New Jersey. (*Id.* Ex. D at 4.). Although the contractor on the site was listed as Heartland Building, a non-signatory to the CBA, the Council insisted that Heartland Development was still responsible for contributions to the Funds. (*Id.* at 5.) In the view of the Council, Heartland Development was an "alter ego" of and "single employer" with Heartland Building. Thus, according to the Council, it was immaterial whether Heartland Building was technically the contractor on the site.

Heartland Development did not respond to the Step I grievance letter or a subsequently filed Step II grievance. (*Id.* at 4.) However, on May 12, 2008, after receiving a Step III grievance letter,

---

judgment was vacated, but did file reply papers in further support of its motion.

Heartland Development wrote to the Council refuting any responsibility for contributions to the Funds, stating that it "has no contractual obligation with Rite Aid for a location on 235 North Maple Avenue, Marlton, New Jersey 08053." (*Id.*) On May 22, 2008, in accordance with Step IV of the grievance process, the Council submitted the matter to arbitration before J.J. Pierson, one of the permanent arbitrators listed in the CBA. (*Id.*)

On September 29, 2008, the Council and Heartland Development arbitrated their dispute without any participation from Hartland Building. (*Id.* at 1.) At the hearing, the Council again took the position that Heartland Development was an alter ego of and single employer with Heartland Building. (*Id.*) And if Heartland Development was an alter ego of and single employer with Heartland Development, the Council argued, then both entities should be responsible for payment to the Funds. (*Id.* at 5.)

In support of the Council's argument, the arbitrator first heard from Kevin Brown, a Council representative and business agent. (*Id.*) Brown testified that he investigated the work site on April 14, 2008, and had discussions with "two men performing carpentry work on site" and an employee named "Pat." (*Id.*) The conversations are hearsay. Brown stated that the two men, who were never identified at the hearing, informed him that they "were working for Heartland." (*Id.*) Brown stated that Pat informed him that the work -- described as "demolition of the front portion of the store" -- was being performed by a non-union maintenance company related to Heartland Development. (*Id.*) Although not explicitly clear, the import of Brown's testimony is that the type of work performed was within the jurisdiction of the Council and Heartland Development. (*Id.* Ex. A at 6-11.)

Following Brown's testimony at the arbitration, the Council introduced "a series of documents to show the relationship of the two entities": "Steward's Weekly Reports" naming both

3

Heartland Building and Heartland Development as the contractor; checks drafted by Heartland Development and made payable to the Funds for other job sites, including another Rite Aid located in Toms River, New Jersey; corporate status reports listing 119 Williams Street, Middlesex, New Jersey for the agent, main, and principal business addresses for both companies; a Dunn and Bradstreet report; a real property tax assessor report; and a Westlaw records report indicating that Ronald Palumbo, Heartland Development's President, was a named defendant in "numerous litigations" against Heartland Development and Heartland Building betwen 2002 and 2008. (*Id.* Ex. D. at 6-7.)[2]

Finally, Palumbo testified on behalf of Heartland Development. Palumbo acknowledged sharing a building with Heartland Building and a receptionist, but insisted that the companies were separate entities, with distinct accounts and business identification numbers. (*Id.* at 7.) Palumbo further stated that he was not "fully versed" in Heartland Building's business, even though he admitted that Heartland Building officers give him "guidance" "on occasion." (*Id.* at 7, n.7.)

Based on the evidence presented at the arbitration, the arbitrator made, the following findings of fact: the type of work performed at the Rite aid was "work within the trade-line jurisdiction of the Council"; Heartland Development "utilized" Heartland Building "as an alter ego employer" to perform the Rite Aid work "to avoid its obligation under the [CBA]"; Heartland Development's defense that it was "not under contract . . . does not excuse utilizing employees of an alter-ego employer to perform the work on the project"; and, having created an alter ego, Heartland Development remained liable for wage and benefit obligations to the Funds. (*Id.* at 8-10.) In making

---

[2] Palumbo was Vice President of Heartland Development at the time of the CBA's execution. (Pl. Petition Ex. B.)

his ruling, the arbitrator noted that the "alter ego/single employer determination" requires consideration of "the totality of the circumstances," including the following factors: "1) common ownership; 2) common business purpose; 3) common customers; 4) common management; 5) common equipment." (*Id.* at 5 n.2 (citing *Pratt-Farnsworth, Inc.*, 690 F.2d 489 (5th Cir. 1982)).)

In light of these findings of fact, the arbitrator ordered that Heartland Development and Heartland Building were "joint and severally liable" for $19,728.00 in lost work opportunities, $10,653.12 for lost wage opportunities, $9,074.88 for lost benefit contributions, $4,932.00 for attorneys' fees, and $3,500.00 for arbitration expenses. (*Id.* at 10-11.) The arbitrator further ordered a number of discovery and enforcement measures in the event of Heartland Development's or Heartland Building's non-compliance with the award. (*Id.* at 11.)

On January 13, 2009, the Council filed a petition and motion to confirm the arbitrator's award and for entry of judgment against Heartland Development and Heartland Building. On February 27, 2009, having not received any objections from either Heartland Development or Heartland Building, the Court granted the Council's motion and entered a judgment in the amount of $47,888.00. On September 9, 2009, the Court held a hearing on a motion to enforce litigant's rights filed by the Council. At that hearing, Heartland Development (only) entered an appearance and argued that it was never served with the Council's petition or motion. As a consequence, on September 11, 2009, the Court entered an order vacating its judgment against Heartland Development only, permitting it to respond to the Council's petition. The Council now moves for confirmation of the arbitration award, Heartland Development cross-moves to vacate the arbitration award, and Heartland Building cross-moves to vacate both the judgment and arbitration award.

## II.   STANDARD OF REVIEW

A court's review in a proceeding to confirm or vacate an arbitration award is "exceedingly narrow." *Eichleay Corp. v. Int'l Assoc. of Bridge, Structural and Ornamental Iron Workers*, 944 F.2d 1047, 1055-56 (3d Cir. 1991). "An arbitration award can be vacated only if it does not draw its essence from the collective bargaining agreement." *Id.* at 1056 (citing *Roberts & Schaefer Co. v. Local 1846, United Mine Workers of Am.*, 812 F.2d 883, 885 (3d Cir. 1987)). Accordingly, a district court "may not vacate an arbitration award merely because it would decide the merits differently." *Id.* at 1056 (citing *Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of Am.*, 896 F.2d 745, 747 (3d Cir. 1990)). "So long as the arbitration award has some support in the record, and the arbitrator has not manifestly disregard the law," a district court must affirm the award. *Id.* Indeed, an "arbitrator's improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (internal quotations omitted).

However, no deference is shown to an arbitrator's award where so-called "representational issues" are present. *Id.*; *accord Nat'l Labor Relations Bd. v. Paper Manufacturers Co.*, 786 F.2d 163, 167 (3d Cir. 1986) ("Representation issues may not be decided by contract, and thus may not be decided by an arbitrator."). A representational issue is where a party asserts that it is not a signatory to a collective bargaining agreement. *See generally Local Union No. 38, Sheet Metal Workers' Int'l Assoc., AFL-CIO v. Custom Air Sys., Inc.*, 357 F.3d 266, 268 (2d Cir. 2004). If a party is not a signatory to a collective bargaining agreement, then an arbitrator lacks the authority to issue an award against that party. *See Int'l Assoc. of Heat & Frost Insulators & Asbestos Workers Local Union 42 v. Absolute Envtl. Servs., Inc.*, 814 F. Supp. 392, 403 (D. Del. 1993). Binding a non-

signatory to a collective bargaining agreement "runs afoul of the fundamental premise that 'a party cannot be required to submit to arbitration any dispute which he has not agree to so submit.'" *Local Union No. 38*, 357 F.3d at 268 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigator Co.*, 363 U.S. 574, 582 (1960)).

### III.   DISCUSSION

#### A.   Heartland Development

Heartland Development seeks to vacate the arbitrator's award for two reasons. First, Heartland Development argues that the arbitrator "erroneously merged" the "single employer" and alter ego doctrines in his analysis. (Heartland Dev. Br. at 4.) Second, Heartland Development claims that the arbitrator "exceeded his powers or imperfectly executed those powers" in evaluating the facts presented. (*Id.* at 3.) Neither of these arguments, however, warrant vacating the award against Heartland Development.

Alter ego status allows for the piercing of the corporate veil where a subsidiary or successor corporation is merely an instrument for a parent company. 1 *Domke on Com. Arb* § 13.6 (2009); *accord* 20 *Williston on Contracts* § 55:19 (4th ed. 2009). In considering alter ego status, courts evaluate whether the companies at issue have common management, business purpose, operation, equipment, customers, and supervision and ownership. *Eichleay Corp. v. Int'l Assoc. of Bridge, Structural and Ornamental Iron Workers*, 944 F.2d 1047, 1059 (3d Cir. 1991). In addition, courts pay particular attention to intent -- that is, whether there is "'the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or technical change in operations.'" *Id.* (quoting *Nat'l Labor Relations Bd. v. Al Bryant, Inc.*, 711 F.2d 543, 553 (3d Cir. 1983)).

The single employer doctrine, while conceptually distinct and more narrow in application, has "essentially the same" elements. *Eichleay*, 944 F.2d at 1059. In determining whether one or more companies are a "single employer," courts consider the "interrelation of operations, common management, centralized control of labor relations, and common ownership." *Id.* (quoting *Bryant*, 711 F.2d at 551). Both the alter ego and a single employer analysis are questions of fact for the arbitrator. *Bryant*, 711 F.2d at 553.

The arbitrator's merger of his alter ego and single employer analysis does not warrant vacation of the arbitration award against Heartland Development. As noted, the Third Circuit has specifically held that the analysis is "essentially the same." *Eichleay*, 944 F.2d at 1059; *accord id.* at 1059-60 ("The elements for a finding of single employer status are closely analogous to the elements for a finding of alter ego status."); *see also* 51A *C.J.S. Labor Relations* § 350 (2009) ("While the alter ego doctrine has the same binding effect on a nonsignatory to a collective bargaining agreement as a single employer/single unit doctrine, the two doctrines are conceptually distinct."). Thus, while conceptually distinct, the arbitrator's merger of his alter ego and single employer analysis cannot, in this case, be considered a "manifest[] disregard [of] the law," warranting vacation of the award. *Eichleay*, 944 F.2d at 1056.

Moreover, there is no suggestion from Heartland Development that alter ego or single employer status was not an arbitrable issue. *See id.* at 1058 (holding that alter ego and single payer status arbitrable issues unless expressly excluded). On the contrary, the CBA specifically indicates that "interpretation and application" of the CBA, including contributions to the Funds, is for the arbitrator to decide. (Pl. Petition Ex. D. at 14.) And the Council asserts that Heartland Development's usage of Heartland Building breached that CBA. Thus, the alter ego and single payer

status of Heartland Development was an arbitrable issue.

Nor does the arbitrator's fact-finding warrant vacation of the award against Heartland Development. To be sure, Heartland Development points to a number of examples in the record it contend belie the arbitrator's ruling that Heartland Development and Heartland Building are alter egos: separate office space, accounts and records, workforce, and tax identification numbers. (Heartland Dev. Br. at 6.) However, there is also sufficient evidence to suggest that the two companies are related. As noted, the arbitrator heard testimony from Kevin Brown, a Council representative that observed the job site, interviewed workers, and presented a construction permit naming "Heartland" as the contractor. (Pl. Petition Ex. D. at 6.) The arbitrator also heard from Ronald Palumbo, President of Heartland Development, who acknowledged "sharing a building" with and receiving "guidance" from Heartland Building officers. (*Id.* at 7.) Finally, the arbitrator considered a "series of documents" showing the relationship of the two companies, including corporate status reports. (*Id.* at 6.) Thus, there is at least "some support" for the arbitrator's fact-finding. *Eichleay*, 944 F.2d at 1056. Accordingly, the Council's motion to confirm the arbitration award against Heartland Development is granted and Heartland Development's cross-motion is denied.

### B. Heartland Building

Because the Court's February 27, 2009 judgment was vacated as to Heartland Development only, Heartland Building's cross-motion seeks to vacate both the Court's judgment and the arbitration award. Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, a court may relieve a party of final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly

> discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . ; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

In deciding whether to vacate a default judgment pursuant to Rule 60(b), courts are required to consider the following factors: "(1) whether lifting the default would prejudice the plaintiff; (2) whether the defendant has a prima facie meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions." *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987) (citing *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984)).

Heartland Building argues that it has both meritorious defenses and will suffer prejudice as a result of the judgment. (Heartland Build. Br. at 5.) With regard to its defenses, Heartland Building asserts that the judgment is void because service of the arbitration demand was deficient. (*Id.* at 4.) In support of this claim, Heartland Building submits the declaration of Arthur Mackey, President of Heartland Building, who states that "to the best of his knowledge," Heartland Building "was never served with notice of any petition for arbitration" or the arbitration award. (Mackey Decl. ¶ 4, 7.) Moreover, Heartland Building notes that it is not a signatory to the CBA and should be given an opportunity to challenge the arbitrability of the Council's claims against it. (*Id.* at 6-7.)

There is some evidence to suggest that Heartland Building did in fact receive notice of the Council's petition to confirm the arbitration award. For instance, the Council submits certified mail receipts signed on January 14, 2009 by Michael Mackey, Vice President and Director of Finance for Heartland Building, accepting service of the Council's petition on behalf of Ronald Palumbo. (Pl.

Reply Br. Ex. E.) Nonetheless, Heartland Building asserts prima facie meritorious defenses, and if judgment is not vacated, Heartland Building would suffer prejudice. Accordingly, pursuant to Rule 60(b), the Court's judgment against Heartland Building is vacated.

Heartland Building also moves to vacate the underlying arbitration award. The arbitrator determined that Heartland Development and Heartland Building were "joint and severally liable." (Pl. Petition Ex. D at 10.) Heartland Building joins in Heartland Developments' arguments regarding the arbitrator's merger of the alter ego and single employer doctrines. In addition, however, Heartland Building argues that the underlying arbitration award should be vacated because it was not a signatory to the CBA, and it was not within the arbitrator's powers to impose alter ego or single employer status upon it. (Heartland Build. Br. at 6-7.) In other words, Heartland Building raises a representational issue.

If a party is not a signatory to a collective bargaining agreement, then an arbitrator lacks the authority to issue an award against that party. *See Int'l Assoc. of Heat & Frost Insulators & Asbestos Workers Local Union 42 v. Absolute Envtl. Servs., Inc.*, 814 F. Supp. 392, 403 (D. Del. 1993). Binding a non-signatory to a collective bargaining agreement "runs afoul of the fundamental premise that 'a party cannot be required to submit to arbitration any dispute which he has not agree to so submit.'" *Local Union No. 38*, 357 F.3d at 268 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigator Co.*, 363 U.S. 574, 582 (1960)). Rather, "[i]t is the province of the courts, not the arbitrator, to determine whether or not a party possesses a duty to submit to arbitration." *Absolute Envtl. Servs.*, 814 F. Supp. at 403. Accordingly, because Heartland Building is not a signatory to the CBA, and the arbitrator was without authority to issue an award against it, the arbitrator's award against Heartland Building is vacated.

In order to hold Heartland Building liable under the arbitration agreement, a hearing on the facts is necessary. *Cf. Local Union No. 38, Sheet Metal Workers' Int'l Assoc., AFL-CIO v. Custom Air Sys., Inc.*, 357 F.3d 266, 268 (2d Cir. 2004) (remand to district court to consider whether non-signatory was alter ego and thus bound by arbitration agreement). Any party may request such a hearing within 20 days of entry of this opinion and accompanying order.

### IV.   CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Council's motion, denies Heartland Development's cross-motion, and grants Heartland Building's motion.

_____
HON. PETER G. SHERIDAN, U.S.D.J.

Dated: April 26, 2010